**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosebud Sioux Tribe, | No. CV 09-1660-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Antanelle Duwyenie, an unmarried woman; Peter J. Deninno, Judge Pro Tempore, Gila County Superior Court of the State of Arizona, | |
| Defendants. | |

Currently before the court is Antanelle Duwyenie's Motion to Dismiss (Dkt.#20) and the Honorable Peter J. Dennino's Motion to Dismiss (Dkt.#14). Having considered the parties' briefs, the Court issues the following Order.

**I.   Background**

In this dispute, the Rosebud Sioux Tribe ("the Tribe") seeks a declaration that the Gila County Superior Court infringed upon the sovereignty of the Tribe when it ruled in a child custody action between William Moran ("Moran") and Antanelle Duwyenie ("Duwyenie"). (Dkt.#8) The Gila County Superior Court's ruling was eventually appealed to the Arizona Court of Appeals, which issued an opinion in Duwyenie v. Moran, 220 Ariz. 501, 207 P.3d 754 (App. 2009).

As described in Duwyenie, 220 Ariz. at 502-503, 207 P.2d at 755-56, the underlying facts relied upon by the Arizona Court of Appeals are as follows: Moran and Duwyenie had

a child and lived together in Globe, Arizona for approximately two years after the child's birth when they decided to separate. They agreed to share custody of the child, with each having him for a week at a time. Moran asked to have the child the first week, and the mother, Defendant Duwyenie, agreed. Moran first told her he was taking the child to Phoenix, and would be back the next day. However, the next day, he told her they were going to stay for "a couple of days." Although Duwyenie called several times over the next two days, he did not answer. He had taken the child to South Dakota, where he had filed a custody petition with the Rosebud Sioux Tribal Court ("RSTC"). Moran was an enrolled member of the Rosebud Sioux Tribe before his trip began.

Duwyenie learned of the petition several days later when Moran telephoned her to confirm that Duwyenie was home to give diapers for the child to a friend of his. When the friend showed up, the friend served her with an interim custody order issued by the RSTC that granted Moran sole custody of the child.

In October 2006, the San Carlos Apache Tribe, apparently at Duwyenie's behest (she was an enrolled member of this tribe), filed a petition for an intertribal judicial conference with the San Carlos Tribal Court, proposing that the tribal courts mutually agree not to assert jurisdiction over this matter so that the parties could proceed to the Gila County Superior Court to resolve their differences in a neutral setting. After the tribal courts conferred later that month, the RSTC Judge assigned to the case dismissed the proceeding, citing Moran's initial failure to disclose that the child resided in Gila County, Arizona, where the child was born.[1] The RSTC Judge found that "[t]he forum that is best suited to hear a custody dispute is the court where the parties resided with the child." However, in December, the Rosebud Sioux Tribal Council, at the request of Moran's uncle, a member of the Council, adopted a resolution asserting the RSTC's exclusive jurisdiction over cases involving its tribal members. Moran then moved the RSTC to reconsider its order of dismissal. Relying on the

---

[1] According to Duwyenie, the first RSTC judge was removed by the Rosebud Sioux Tribal Council at the urging of Moran's uncle. (Dkt.#20 at 4)

tribal council's recent resolution, a newly-appointed, different RSTC Judge accepted jurisdiction and reinstated the case in January 2007.[2]

Between September 2006 and February 2007, Duwyenie had been granted approximately ten days of visitation with the child. In February 2007, the RSTC authorized more extensive visitation, provided that Duwyenie and the San Carlos Tribe did not continue to challenge the RSTC's jurisdiction. In April 2007, Duwyenie dismissed the proceedings in the San Carlos Tribal Court. She subsequently returned to Arizona with the child in September 2007 in violation of the RSTC's temporary custody order.

Upon returning to Arizona, Duwyenie intiated the proceeding in the Gila County Superior Court.[3] After conferring with the RSTC, which declined to relinquish its claim to jurisdiction, and following a hearing, the Gila County Superior Court found that Arizona was the child's home state and accepted jurisdiction. Moran appears to have challenged the Gila County Court's jurisdiction over the child (see infra footnote 4), but in June 2008, the parties stipulated to an order determining paternity, child custody, access, and child support, which included a provision conditioning Moran's visitation on his posting a $20,000 bond.

Moran later appealed, arguing that the Gila County Superior Court "improperly exercised jurisdiction over this matter" in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), A.R.S.§§ 25-1001 through 25-1067. The Arizona Court of Appeals affirmed the Gila County Superior Court's exercise of jurisdiction, and awarded Duwyenie reasonable attorney fees and costs on appeal. 220 Ariz. at 506-07, 207 P.3d at 759-60.

---

[2] According to Duwyenie, "The newly appointed judge of the RSTC, Sherman Marshall, then delayed until after the new resolution was passed before it ruled on Father's Motion for Reconsideration." (Dkt.#20 at 4)

[3] It does not appear that the Rosebud Sioux Tribe ever sought federal relief before the Gila County Superior Court ruled that it had jurisdiction over the case. Likewise, it does not appear that the Tribe ever sought federal relief while the state appeal was pending. It was only after the Arizona Court of Appeals issued its ruling that the Tribe sought federal relief by filing the instant action in federal court.

1    Here, the Rosebud Sioux Tribe seeks a declaration that the Gila County Superior Court "infringed upon the sovereignty of the Rosebud Sioux Tribe" by exercising jurisdiction over the case. (Dkt.#8) The Rosebud Sioux Tribe named Duwyenie and the Honorable Peter J. Dennino, Judge Pro Tempore, as Defendants in the First Amended Complaint. (Dkt.#10)

Both Duwyenie and Judge Dennino filed separate motions to dismiss; each is addressed below.

**II.     Analysis**

Judge Dennino moves to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt.#14) Duwyenie moves to dismiss on the same basis, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt.#20)

**A.     Legal Standard**

When a party moves to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the Plaintiff bears the burden of proof that the court has jurisdiction to decide the claim(s). Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction, [ ] and the burden of establishing the contrary rests upon the party asserting jurisdiction."); see also Thornhill Publ'n v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

In contrast, to survive a Rule 12(b)(6) motion to dismiss, the complaint must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party." Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

**B.    The Rooker-Feldman Doctrine**

Both Duwyenie and Judge Dennino assert that all of Plaintiff's claims are barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate her claims." Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir. 2003). "Under Rooker-Feldman, a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court." Id. at 896.

The test, as articulated by the Feldman Court, is as follows:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application [for relief], then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

D.C. Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983).

The purpose behind the doctrine is clear; federal courts may not second-guess state court decisions by hearing de facto appeals from state-court judgments. Bianchi, 334 F.2d at 898. The only exception to this rule is when the United States Supreme Court hears appeals from the highest state court.

The Tribe argues that the doctrine has no application to this case because it was not a party to the state court decision and asserts that Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005) held that the Rooker-Feldman doctrine can only be applied against state court losers. However, the Exxon Court explained that Rooker-Feldman "recognizes that 28 U.SC. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court-judgments, which Congress has reserved to this [the Supreme] Court." 544 U.S. at 292. Exxon distinguished between parallel state court proceedings where the federal and state suit were filed nearly

contemporaneously with each other (explaining that subject matter jurisdiction does not magically disappear if the state court should reach a decision before the federal parallel proceeding) and cases where a party is seeking a de facto appeal of a state court proceeding. Here, it is clearly the latter situation. It was only after the Gila County Superior Court had ruled on the matter that the Tribal Court filed this action, seeking a de facto appellate ruling that the Gila County Superior Court impinged on its sovereign immunity. This Court is not the proper forum for such a request. See Confederated Tribes of Colville Reservation v. Superior Court of Okanogan County, 945 F.2d 1138 (9th Cir. 1991) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 24 (1987) (Marshall, J., concurring) ("Federal review can occur, of course, but only in the Supreme Court, on appeal or by writ of certiorari.").

Accordingly, the Exxon holding that Rooker-Feldman does not apply to parallel state and federal litigation simply has no application to the present case. 125 S.Ct. at 1526 ("When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court."). Here, it was the entry of judgment in state court itself that triggered this action.

A recent Ninth Circuit case, Reusser v. Wachovia Bank, N.A., 525 F.3d 855 (9th Cir. 2008) explained that even though the Rooker-Feldman doctrine has been "pared back of late, "it remains a viable jurisdictional bar." Id. at 860 n.6. The Ninth Circuit emphasized that the core inquiry is whether the federal action is a de facto appeal from a final state court judgment. Id. at 858-59.

The tribe seeks a declaration that "the Gila County Superior Court infringed upon the sovereignty of the Rosebud Sioux Tribe" and seeks to have The Tribal Court's bench warrant enforced against Duwyenie. This relief is necessarily incompatible with the state court ruling. "Rooker-Feldman looks to federal law to determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Bianchi, 334 F.3d at 900. "If the injury alleged resulted from the state court judgment itself, Rooker-Feldman directs that the lower federal court lacks jurisdiction." Id. at 901. "[U]nlike res judicata, the Rooker-Feldman doctrine is not limited to claims that were

actually decided by state courts, but rather it precludes review of all "state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Id. Because the state proceeding itself is what gives rise to the Tribe's alleged claims, allowing the Tribe's claims to survive would violate the principles of federalism and comity that gave rise to the Rooker-Feldman doctrine.

As the Ninth Circuit explained in Bianchi, "[i]t is difficult to imagine what remedy the district court could award in this case that would not eviscerate the state court's judgment." 334 F.3d at 902. "The integrity of the judicial process depends on federal courts respecting final state court judgments and rebuffing de facto appeals of those judgments to federal court." Id.

Entertaining the Tribe's claim would necessarily require the Court to review and invalidate the state court decision, a result that is inconsistent with the Rooker-Feldman doctrine. Bianchi, 334 F.3d at 896. Because the Court cannot grant the relief that the Tribe seeks without "undoing" the decision of the state court, the "principles of federalism and comity that underlie the Rooker-Feldman doctrine" would appear to require that this case be dismissed. Id. at 902.

However, there is a brief reference in a Ninth Circuit case that causes the Court to further examine this issue. According to the Ninth Circuit in Reusser, "Rooker-Feldman does not bar actions by a nonparty in a prior state suit." 525 F.3d at 860 n.6 (citing Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).

Reusser involved an alleged fraud in a state court home foreclosure proceeding during the homeowner's bankruptcy. 525 F.3d 855. The Reussers, as debtors/mortgagors, brought a 42 U.S.C. § 1983 claim, arguing that the bank acted jointly with the state officers, clerks, judges and sheriffs "under color of law" to wrongfully evict them. The Ninth Circuit explained that the § 1983 claims constituted a de facto appeal of the state court decision, even though the state court did not explain the basis for its ruling on the default judgment, because the basis for the alleged fraud, that the bank had failed to provide sufficient notice and that

the Reusser's failure to appear was supported by "good cause," had been presented to the trial court.[4] Id. at 860.

In Johnson v. De Grandy, 512 U.S. 997 (1994), the United States Supreme Court held that the Rooker-Feldman did not bar the United States from litigating Florida's reapportionment plan that established legislative districts for the Senate and the House even though the Supreme Court of Florida, by declaratory judgment, had already held that the plan was valid under federal law. The Court explained that "because the United States was not a party in the state court," the Rooker-Feldman doctrine did not apply. Id. at 1006.

Since the Tribe was not a party in the state proceeding, the Court will consider an alternative challenge to the Court's subject matter jurisdiction: the inapplicability of the Indian Child Welfare Act, discussed below.

**C.     Subject Matter Jurisdiction under The Indian Child Welfare Act**

Plaintiff asserts that this Court has jurisdiction pursuant to 25 U.S.C. § 1914, which provides

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

Plaintiff asserts that the basis for jurisdiction in this case is because there was a violation of 25 U.S.C. § 1911. Section 1911(a) provides that

---

[4] Here, the basis for Moran's arguments regarding jurisdiction appears to have been made to the Arizona Court of Appeals, as well as to the Gila County Superior Court. (Dkt.# 23-1, 23-2) Duwyenie submitted a copy of Moran's letter to the Gila County Superior Court dated September 16, 2007, that argues that 25 U.S.C.A. § 1911(a) applied since the child was "ward" of the RSTC. (Dkt.#23-3) The letter included the order from the RSTC that stated that the RSTC had exclusive jurisdiction. Duwyenie also discussed the issue of the ICWA, after Moran raised it, in her legal memorandum filed with the Gila County Superior Court on October 5, 2007. (Dkt.#23-4) Although the Gila County Court did not explicitly make a written finding that the ICWA did not apply, the fact that the Court retained the case after the issue was raised supports that the Gila County Court implicitly made a determination that the ICWA did not apply.

> An Indian tribe shall have jurisdiction exclusive as to any State over any <u>child custody proceeding</u> involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of the tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the domicile of the child.

25 U.S.C.A. § 1911(a) (emphasis added).

However, as Defendants point out, "child custody proceeding" is a defined term;

(1) "child custody proceeding shall mean and include –

> (I) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
>
> (ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;
>
> (iii) "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and
>
> (iv) "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption. Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents.

25 U.S.C.A. § 1903(1).

Defendants note that because the state court proceeding did not involve any of these types of actions, section 1911(a) of the Indian Child Welfare Act is inapplicable. Without a showing of a violation of section 1911, however, there appears to be no basis for federal jurisdiction in this case, since Plaintiff has not identified any violation of sections 1912 (providing notice and due process requirements for termination proceedings) or 1913 (voluntary termination of parental rights). 25 U.S.C. § 1914

Plaintiff's only response to this argument is to urge the Court to consider an "analogous" case that was based on the Indian Civil Rights Act ("ICRA") and decided by the Eighth Circuit, <u>DeMent v. Oglala Sioux Tribal Court</u>, 874 F.2d 510 (8th Cir. 1989). However, <u>DeMent</u> confirms that the ICWA does not apply to child custody disputes. The

- 9 -

Court explained that the ICWA "only applies to proceedings to determine foster care placement, the termination of parental rights, preadoptive placement and adoptive placement." Id. at 514. It specifically noted that "[e]xclusive jurisdiction was not given in proceedings to determine the custody of children in a divorce proceeding." Id. (emphasis added) (citing 25 U.S.C. § 1903).

Given the presumption against jurisdiction, Plaintiff has failed to meet its burden to prove that the Court has subject matter jurisdiction over this dispute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction, [ ] and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

**D.    Judicial Immunity**

Moreover, as Defendants point out, Judges have absolute immunity from liability for their judicial or adjudicatory acts. Forrester v. White, 484 U.S. 219, 108 (1988). Plaintiff never responds to this argument (Dkt. #24). Accordingly, Judge Deninno would be dismissed from this case even notwithstanding the above.[5]

**E.    Justiciability**

Once Judge Deninno is dismissed from the case, the only remaining Defendant is Ms. Duwyenie. Plaintiffs seek (1) a declaratory judgment that the Gila County Superior Court infringed upon the sovereignty of the Rosebud Sioux Tribe and (2) a declaratory judgment that the bench warrant for Ms. Duwyenie's arrest issued by the RSTC "is, and shall be, enforceable within the State of Arizona." Clearly, neither claim is properly redressed by proceeding against Ms. Duwyenie. Accordingly, Duwyenie would be dismissed from this case notwithstanding the above as well.

---

[5] The Tribe originally named the Superior Court of the State of Arizona, in and for Gila County as a Defendant; however, their Complaint with Technical Correction amended the Complaint to substitute "Peter J. Deninno, Judge Pro Tempore, Gila County Superior Court, Superior Court of the State of Arizona" in the place of the Superior Court. (Dkt.#s 1, 8) Based on the Tribe's decision, the Gila County Superior Court was terminated from this matter when it filed the amended complaint.

Given that no Defendants nor claims survive, Defendants motions to dismiss are granted.

**Accordingly,**

**IT IS HEREBY ORDERED** granting both motions to dismiss (Dkt.#s 14, 20).

**JUDGMENT ENTERED ACCORDINGLY.**

DATED this 17th day of June, 2010.

_____
Mary H. Murgia
United States District Judge